

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JAN 11  PM 1: 23

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TIMOTHY TAPP

CRIMINAL ACTION

NO. 00-253

SECTION "N"

## ORDER AND REASONS

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed by Timothy Tapp. (Rec. Doc. No. 398). For the reasons stated herein, the Court denies defendant's motion.

## I. BACKGROUND

On February 22, 2001, defendant Timothy Tapp, pursuant to a written plea agreement, pleaded guilty to one count of knowingly and intentionally possessing with the intent to distribute more than 50 grams of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1).[1] As part of his plea agreement, Tapp agreed not to appeal or contest his sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255, except under limited circumstances. *See* Plea Agreement at 2 (Rec. Doc. No. 200). Specifically, Tapp reserved the

---

[1]  The plea agreement was submitted in the form of a *Bryan* letter. *See Bryan v. United States*, 492 F.2d 775 (5th Cir. 1974).

DATE OF ENTRY

JAN 1 1 2005

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

right to challenge (i) any punishment imposed in excess of the statutory maximum, and (ii) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court. *See id.*

The Pre-Sentence Investigation Report (hereinafter "PSIR") fixed Tapp's total offense level at 35 with a criminal history category of II, resulting in a sentencing guideline range of 188 to 235 months. Tapp filed objections to the PSIR, arguing (i) that although he stipulated to the information in the factual basis, his intention was to plead to half of the amount of drugs seized by Jefferson Parish Sheriff's Deputies and the FBI, which would yield a base offense level of 36, rather than a base offense level of 38; and (ii) that he should not have received a criminal history point for a previous battery conviction. In the addendum to the PSIR, the United States Probation Officer refused to revise the PSIR because (i) there was no proof that Tapp was responsible for only half of the seized cocaine base, and Tapp affirmed his responsibility for the full amount of drugs in the factual basis he signed; and (ii) Tapp misinterpreted the guideline language found in section 4A1.2(c)(1) of the United States Sentencing Guidelines regarding the criminal history point attributed to him for his previous conviction.

At sentencing on June 20, 2001, the Court accepted the findings and recommendations in the PSIR and overruled Tapp's objections. *See* Statement of Reasons for Imposing Sentence (Rec. Doc. No. 272). The Court entered judgment against Tapp, sentencing defendant to a 194-month term of imprisonment, a five-year term of supervised release, and a $5,000 fine. *See id.*

Tapp filed an untimely direct appeal of his sentence on July 3, 2001.[2] *See* Notice of

---

[2]   The deadline to file a timely notice of appeal was June 30, 2001, which fell on a Saturday, thereby extending the deadline to Monday, July 2, 2002.

Appeal (Rec. Doc. No. 280).  On August 8, 2001, the Fifth Circuit remanded the case to the

district court to determine whether the untimely filing of the appeal notice was due to excusable

neglect or good cause.[3]  (Rec. Doc. No. 323).  Pursuant to the Fifth Circuit's directive, on

August 22, 2001, the district court issued a minute entry ordering Tapp to file a brief by

September 12, 2001, on the issue of whether his untimely appeal was due to excusable neglect

or good cause.  (Rec. Doc. No. 326).  Because the defendant thereafter failed to file a brief, the

district court determined that the untimely filing of the appeal notice was not the result of

excusable neglect or good cause.  (Rec. Doc. No. 344).  The Fifth Circuit consequently

dismissed the appeal for lack of jurisdiction.

On January 13, 2003, Tapp filed the instant Motion to Vacate, Set Aside or Correct his

sentence pursuant to 28 U.S.C. § 2255, alleging that counsel rendered ineffective assistance (i)

during the factual basis stage of plea negotiations, (ii) at sentencing, and (iii) through counsel's

failure to file a timely appeal.  On May 16, 2003, Tapp filed a Reply to the Government's

Memorandum in which he additionally alleged that his plea was not knowing or voluntary

because the District Judge failed to personally inquire as to whether he understood the nature of

the charge against him and the constitutional rights being waived by entering a guilty plea.  *See*

Reply to Gov't Mem. at 2 (Rec. Doc. No. 406).  On August 6, 2003, Tapp filed a

"Supplementary Citation," requesting that the Court consider a decision not previously cited in

his memoranda.  (Rec. Doc. No. 408).

## II.  LAW AND ANALYSIS

The motion, files and records of the case conclusively show that the prisoner is not

_____

[3]  *See* Fed. R. App. P. 4(b)(4).

3

entitled to relief. The matter is based entirely upon the application of legal principles to established facts. Therefore, an evidentiary hearing is not required. 28 U.S.C. § 2253.

## A.  Challenge to Waiver Based on Court's Alleged Violation of Fed. R. Cr. P. 11

As previously noted, Tapp filed a Reply to the Government's Memorandum on May 16, 2003. In the Reply, Tapp alleged additional facts to supplement his original Motion. Among those facts alleged were assertions that the District Judge failed to personally question Tapp to determine whether he understood the charge against him and the consequences of his plea. Because justice requires courts to construe *pro se* pleadings liberally, Tapp's Reply to the Government's Memorandum will be construed as a request to amend his original petition. *See U.S. v. Riascos*, 76 F.3d 93 (5th Cir. 1996), *see also Curtis v. U.S.*, 1996 WL 671738 (N.D.Miss. Oct. 11, 1996).

A motion by a federal prisoner for post-conviction relief is subject to a one-year time limitation that generally runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. For determining the start of § 2255's one-year limitation period, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction. *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). A petition for a writ of certiorari must be filed no later than 90 days after entry of the Court of Appeal's judgment. Sup. Ct. R. 13(1).

Tapp's conviction became final on April 15, 2002.[4] It is undisputed that the original motion filed on January 13, 2003 was timely. However, the Reply to the Government's

_____

[4]  Tapp's conviction became final 90 days after the Fifth Circuit's January 15, 2002 Order denying the defendant's motion for reconsideration. *See Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).

Memorandum was received on May 16, 2003, after the one-year limit.  Under 28 U.S.C. § 2242, an application for a writ of habeas corpus may be amended or supplemented as provided in the rules of procedure applicable to civil actions.  Thus, to be timely, amendments to 28 U.S.C. § 2255 motions made after the one year statute of limitations must "relate back" under Rule 15 of the Federal Rules of Civil Procedure.  *United States v. Saenz,* 282 F.3d 354 (5th Cir. 2002). Under Rule 15(c)(2), an amendment to the pleadings relates back, for limitation purposes, if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.  Because the assertions in Tapp's Reply ultimately affect the validity of his plea and waiver of his appellate rights and his post-conviction rights, those assertions are deemed to relate back to the timely filed § 2255 Motion.

As noted, Petitioner waived his right to challenge his sentence in a post-conviction proceeding if his sentence was below the statutory maximum and within the statutory guideline range deemed most applicable by the sentencing court.  Petitioner challenges his waiver on the grounds that it was not knowing or voluntary due to the alleged deficiencies in the plea colloquy.  The Fifth Circuit has held that a waiver of post-conviction relief such as 28 U.S.C. § 2255 is valid to bar such relief if the waiver is informed and voluntary.  *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994).  The defendant must know that he had "a right to appeal his sentence and that he was giving up that right."  *United States v. Portillo,* 18 F.3d 290, 292 (5th Cir.1994) (internal quotations and citation omitted).  It is the responsibility of the district court "to insure that the defendant fully understands [his] right to appeal and the consequences of waiving that right."  *United States v. Gonzalez,* 259 F.3d 355, 357 (5th

5

Cir.2001) (quoting *United States v. Baty,* 980 F.2d 977, 979 (5th Cir.1992)).

Without ever specifically citing Rule 11 of the Federal Rules of Criminal Procedure,

Tapp implies that the District Court violated Rule 11 by failing to personally address him to

determine whether his plea was in fact knowing and voluntary.[5] Tapp argues that he was not

personally addressed because the District Court advised multiple defendants of their rights

before accepting guilty pleas, as opposed to addressing each defendant individually. This Court

agrees with the findings of the Sixth and Seventh Circuits which have held that the

requirements of Rule 11 are not violated by addressing multiple defendants as a group. *See*

*Guinn v. United States,* 28 F.3d 1213 (6th Cir. 1994); *United States. v. Fels,* 599 F.2d 142 (7th

Cir. 1979). It is clear from the record that all defendants were addressed directly, rather than

through their attorneys or through the prosecutors, and all defendants were required to

personally respond to the questions directed at the group. *See generally* Transcript of

Rearraignment (Rec. Doc. No. 401). Tapp responded to all questions asked by the District

Court, thereby indicating that he understood that all of the information and questions were

directed at him personally. *Id.*

The record demonstrates that Tapp's waiver was both knowing and voluntary. His signed

---

[5]  Rule 11(b) provides, in pertinent part, as follows:

> Before the court accepts a plea of guilty . . . the court must address the
> defendant personally in open court. During this address, the court must
> inform the defendant of, and determine that the defendant understands . . .
> the terms of any plea-agreement provision waiving the right to appeal or to
> collaterally attack the sentence. . . . [T]he court must address the
> defendant personally in open court and determine that the plea is voluntary
> and did not result from force, threats, or promises (other than promises in a
> plea agreement).

plea agreement which contained an express waiver of his right to appeal or seek relief under Section 2255 if his sentence was within the applicable sentencing guideline range and below the statutory maximum. *See* Plea Agreement at 2. During the rearraignment, the Court explicitly instructed Tapp to seek clarification of any question he did understand and informed him of his right to confer with his attorney on any question. Tr. of Rearr. at 7. The Court asked Tapp if he had ample opportunity to discuss his case with his attorney and he responded in the affirmative. *Id.* at 10. The Court listed the rights Tapp would be giving up by entering a plea of guilty; Tapp confirmed that he understood. *Id.* at 13. The Court also informed Tapp that by entering a guilty plea he would be waiving his right to appeal his sentence or to contest his sentence in a post-conviction proceeding except under very limited circumstances, and the Court listed those circumstances. *Id.* at 13-14. The Court determined on the record that Tapp understood the nature of the rights that he was forfeiting. *Id.* at 13-14. *See Frank v. United States,* 501 F.2d 173, 175 (5th Cir.1973). The Court then summarized the indictment and stated the mandatory minimum and maximum sentences under the applicable statute. *Id.* at 15, 17. The Court then confirmed with Tapp (i) that the plea agreement he signed correctly stated the agreement between him and the Government, and (ii) that no one had persuaded him to plead guilty or made any promises as to what his sentence would be. *Id.* at 21, 23-24. Tapp affirmed that he fully understood and voluntarily approved of his plea. *See Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity"). Tapp now presents no reason for the Court to find otherwise. Accordingly, the Court concludes that the defendant's waiver of his appellate rights and post-convictions rights was both knowing and voluntary.

7

**B.  Ineffective Assistance of Counsel**

The Fifth Circuit has emphasized that "[r]elief under 28 U.S.C. § 2255 is reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not have

been raised on direct appeal and would, if condoned, result in a complete miscarriage of

justice." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).  As noted above, Tapp

purports to raise issues of constitutional error premised on his claim that he received ineffective

assistance of counsel, in violation of the Sixth Amendment .  Specifically, Tapp challenges his

counsel's performance during plea negotiations, his counsel's performance at sentencing and his

counsel's failure to file a timely appeal on the grounds of ineffective assistance of counsel.  In

considering these challenges, the Court is guided by the decisions rendered in *United States v.*

*Anderson*, 2002 WL 1610964 (E.D.La. July 19, 2002) (Vance, J.), *United States v. Adams*, 2002

WL 826770 (E.D.La. Apr. 30, 2002) (Vance, J.), and *United States v. Flunker*, 2000 WL

823469 (E.D.La. June 23, 2000) (Clement, J.), holding that when a defendant waives his right to

collaterally attack his sentence in his plea agreement, a court may consider claims of

ineffectiveness of counsel with respect to the plea agreement itself, but may not consider such

claims regarding the attorney's performance at sentencing.

**1.  Counsel's Performance During Plea Negotiations**

In *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994), the Fifth Circuit acknowledged

that a waiver of Section 2255 relief may not always apply to bar a collateral attack based upon

ineffective assistance of counsel.  20 F.3d at 653 (citing *United States v. Abarca*, 985 F.2d

1012, 1014 (9th Cir.), *cert. denied*, 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993)).

*See also United States v. Walker*, 68 F.3d 931, 934, (5th Cir.), *cert. denied*, 516 U.S. 1165, 116

S.Ct. 1056, 134 L.Ed.2d 201 (1996) ("[I]neffective assistance of counsel, if shown, is sufficient

to establish the cause and prejudice necessary to overcome a procedural default").  Moreover, in

*United States v. Henderson,* 72 F.3d 463 (5th Cir.1995), the Fifth Circuit permitted a criminal

defendant to appeal, despite a waiver in his plea agreement, when he asserted that the appeal

waiver was tainted by ineffective assistance of counsel.  Accordingly, the Court will consider

whether Tapp's guilty plea was invalid because of ineffective assistance of counsel.

To prevail on an ineffectiveness claim, petitioner must demonstrate:  (1) that his

counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced

the outcome of his trial. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984).  Petitioner must satisfy both prongs of the *Strickland* test in order to

succeed. *See id.* at 687, 104 S.Ct. 2064.  To establish a deficient performance, petitioner must

show that his counsel's representation "fell below an objective standard of reasonableness."

*Jones v. Jones,* 163 F.3d 285, 301 (5th Cir.1998) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct.

2052).  The Court makes every effort to eliminate the distorting effects of hindsight and to

evaluate the conduct from counsel's perspective at the time of trial. *See id.* (quoting *Pitts v.

Anderson,* 122 F.3d 275, 279 (5th Cir.1997)). *See also Lockhart v. Fretwell,* 506 U.S. 364, 371,

113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (on ineffective assistance claim, courts judge

counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct)

(quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2066)).

The second prong of *Strickland* requires petitioner to show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2068.  "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* If Tapp fails to establish

either deficient performance or actual prejudice, the Court may dispose of the claim without

addressing the other prong. *Id.* at 697, 104 S.Ct. 2069.

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme

Court applied the *Strickland* test to a case involving a guilty plea. In the guilty plea scenario, a

petitioner must prove not only that his attorney actually erred, but also that he would not have

pleaded guilty but for the error. *See Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir.1994). Under

the first prong of the *Strickland/Hill* test, if a defendant is represented by counsel during the

plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea

depends on whether counsel's advice was within the range of competence demanded of

attorneys in criminal cases." *Hill,* 474 U.S. at 56, 106 S.Ct. 369 (internal quotes omitted). To

meet the prejudice prong of the test, a petitioner must establish that but for his counsel's alleged

erroneous advice, he would not have pleaded guilty but would have insisted on going to trial.

*Id.* at 59, 106 S.Ct. 370; *see also Armstead,* 37 F.3d at 206 (citing *Carter v. Collins,* 918 F.2d

1198, 1200 (5th Cir.1990)).

Tapp first alleges that he was denied the Sixth Amendment right to assistance of counsel

because "stand-by" counsel Michelle Beaty-Gullage represented him during plea negotiations.

To support this claim, Tapp cites *United States v. Taylor*, 933 F.2d 307 (5ᵗʰ Cir. 1991). The

*Taylor* decision, however, is entirely inapplicable to the matter at hand. In *Taylor,* following

the appointment of a federal public defender but prior to trial, the defendant waived his right to

counsel, asking to represent himself. 933 F.2d at 309. The district court allowed the defendant

to do so, but appointed an attorney to act as standby counsel during the trial. *Id.* After a jury

found him guilty, the defendant withdrew his request to represent himself and asked the district

court to appoint counsel to represent him at sentencing. *Id.* Finding that the initial waiver was

effective and still binding, the district court denied the defendant's request. *Id.* The district

court, however, did allow the appointed attorney to continue to serve as standby counsel. *Id.*

On direct appeal, one of the challenges presented therein was the district court's refusal,

following jury trial and conviction, to allow the *pro se* defendant to withdraw his earlier waiver

of his right to counsel and to appoint counsel for sentencing. 933 F.2d at 309. The

determinative issue, as found by the Fifth Circuit, was whether the assistance of "standby

counsel" satisfied the Sixth Amendment. *Id.* at 312. Concluding that "standby counsel" is not

counsel, as that term is used in the Sixth Amendment, the Fifth Circuit held that the district

court's refusal denied the defendant of his fundamental right to assistance of counsel and

therefore remanded the case for re-sentencing with the assistance of counsel. *Id.* at 312-13. In

so holding, the Court highlighted the differences in the roles of "standby counsel," which is

quite limited, and "regular counsel." *Id.* As noted by the Court, "standby counsel" is not

responsible - and is not perceived to be responsible - for the accused's defense. *Id.* at 312.

Further, "standby counsel," as opposed to "regular counsel," does not represent the defendant;

rather, the defendant represents himself and may or may not seek or heed the advice of the

attorney standing by. *Id.* at 313.

The facts here are quite different. The record does not contain any waiver of the right to

counsel. In fact, Tapp was represented by "regular counsel." Based on his reliance on the

*Taylor* holding, it is evident that the defendant has confused the two concepts of "standby

11

counsel" and "co-counsel."[6] Tapp's first argument regarding the alleged denial of his Sixth Amendment right to assistance of counsel is without merit.

In further pursuing post-conviction relief based on the assistance received during plea negotiations, Tapp also alleges that Gullage informed him that: (i) the drug quantity being stipulated to in the factual basis was just something the Government could have used if the case went to trial; (ii) the drug quantity would not be an excess amount accountable for sentencing purposes; (iii) if he signed the plea agreement he would be sentenced to no more than 11 or 12 years; and (iv) he had to plead to the full drug quantity at the signing of the plea agreement, but the amount would be reduced at sentencing. Pet'r Mot. at 12; Reply to Gov't Mem. at 1-2. The first alleged statement by Gullage is easily disposed of by pointing to the specific language in the Factual Basis which Tapp signed. The Factual Basis states in relevant part: "[t]he Government and the defendant, Timothy Tapp, agree and stipulate that the amount of drugs that the Government can prove <u>for sentencing purposes</u> is more than one and a half kilograms of cocaine base ('crack')."[7] Factual Basis at 2 (Rec. Doc. No. 201) (emphasis added). The third alleged statement is likewise foreclosed by circuit precedent which holds that "reliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary." *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) (*citing United States v. Jones*, 905 F.2d 867 (5th Cir. 1990)).

---

[6] At all relevant times, Ms. Gullage was associated with trial counsel, Ike Spears. Additionally, Mr. Spears was present at the rearraignment hearing. *See generally* Tr. of Rearr.

[7] Tapp indicated at the rearraignment hearing that he had completed school through the tenth grade. Tr. of Rearr. at 9. Moreover, Tapp has not presented this Court with any argument suggesting that, at the time he signed the factual basis, he could not read.

Assuming *arguendo* that the remaining allegations are true and that the first prong of the *Strickland/Hill* test has been met, the Court finds that Tapp has failed to make a showing of prejudice as required by the second prong of the test. The only reference Tapp makes to a desire to go to trial instead of entering the plea agreement is his allegation of having told Gullage, prior to his entering plea negotiations, that he would not cooperate and would take no more than ten years on any plea or he would go to trial. Reply to Gov't Mem. at 1. Tapp, however, subsequently admits that he entered the plea agreement after Gullage allegedly informed him that he would receive a sentence of no more than 11 or 12 years, thereby negating his previous assertion that he would go to trial if there was a chance that he would receive a sentence over ten years. *Id.*

In addition, it is clear from the record that all of Gullage's alleged misstatements would have been cured by the following questions and answers that took place at Tapp's rearraignment:

> The Court: Do you understand that I may or may not decide to sentence you within the guidelines if I find they do not take into consideration relevant facts concerning you or the crime you are seeking to plead guilty to?
>
> Tapp: Yes, ma'am
>
> ***
>
> The Court: All right, has anyone made any promise to you, other than what is in the plea agreement that persuaded you to plead guilty?
>
> Tapp: No. ma'am
>
> ***
>
> The Court: Has anyone connected with the Government, or any law

13

enforcement agency, or anyone else at any time made any prediction or
any promise to you as to what your sentence will be?

Tapp: No. ma'am

\*\*\*

The Court: Do you understand the Government's evidence as described in
the factual basis and do you agree that this is what you did?

Tapp: Yes, ma'am

Tr. of Rearr. at 18-19, 22-25.

The Court informed Tapp of sentencing procedures and thoroughly questioned his

understanding of the information. Tapp was given the opportunity to point out and question any

discrepancies between his attorney's statements and the Court's statements, but failed to do so.

Thus, it can be concluded that the plea colloquy at Petitioner's rearraignment cured any alleged

misstatements by Gullage. *See Bonvillain v. Blackburn,* 780 F.2d 1248 (5th Cir. 1986) (holding

that judge's instructions to defendant cured misrepresentations by attorney). The Court

therefore denies Tapp's claim of ineffective assistance of counsel with respect to counsel's

assistance during plea negotiations and confirms that Tapp's plea was entered knowingly,

intelligently, and voluntarily.

## 2. Counsel's Performance at Sentencing and on Appeal

The Court finds that Petitioner's challenge to the effectiveness of his counsel at

sentencing is an effort to end-run the effect of his waiver of Section 2255 relief. Although the

Fifth Circuit in *Wilkes, supra,* determined that a waiver of Section 2255 relief in a plea

agreement does not always apply to bar collateral attacks based upon ineffective assistance of

counsel, in this case the waiver is effective. *See Wilkes,* 20 F.3d at 653 (citations omitted).

14

Indeed, the *Wilkes* court enforced the waiver once the court established that the waiver was knowing and voluntary. *See id.* ("...here the appropriateness of the waiver is beyond question"). As correctly pointed out in *United States v. Flunker, supra,* challenges to counsel's effectiveness at sentencing are not cognizable on collateral attack when a petitioner enters a plea agreement in which he knowingly and voluntarily waived his right to challenge the sentence by way of Section 2255 relief, and his guilty plea is not tainted by ineffective assistance of counsel. *See Flunker*, 2000 WL 823469, *5 ("when a defendant waives his right to collaterally attack his sentence, a court may consider claims of ineffectiveness with respect to the plea agreement itself, but may not consider claims of ineffectiveness with respect to his attorney's performance at sentencing."); *see also Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir.2000) (waiver of Section 2255 relief as to sentence precludes collateral challenge to sentence when petitioner does not challenge the voluntariness of negotiation of waiver or counsel's effectiveness in negotiating the waiver); *United States v. Jones,* 167 F.3d 1142, 1145 (7th Cir.1999) ("waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."); *United States v. Djelevic,* 161 F.3d 104, 107 (2d Cir.1998) (rejecting petitioner's claim that knowing and voluntary waiver should not bar consideration of appeal because counsel was ineffective at sentencing).

Here, the Court has determined that Petitioner knowingly and voluntarily waived his right to post-conviction relief and that his guilty plea was not invalid by reason of ineffective assistance of counsel. The Court therefore refuses to consider the merits of Tapp's challenge to his counsel's performance at sentencing or the alleged defects in his sentence.

15

Additionally, Tapp's argument that his counsel's assistance was ineffective because his counsel failed to appeal his sentence is unavailing. After a defendant has knowingly and voluntarily waived his right to appeal his sentence, his counsel "is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Wilkes,* 20 F.3d at 653 (*quoting Smith v. Puckett,* 907 F.2d 581, 585 n. 6 (5th Cir.1990), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 694 (1991)); *see also Polonio v. United States,* 2002 WL 31627978 (S.D.N.Y. 2002) (holding that attorney's failure to file an appeal did not amount to ineffective assistance of counsel when defendant knowingly and voluntarily entered into a plea agreement wherein she waived her right to appeal her sentence).

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255 filed by defendant Timothy Tapp is **DENIED**.

New Orleans, Louisiana, this _10th_ day of January, 2005.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE